1810.
DECEMBER.

The State
vs
Chase

S C was appointed under the act of 1783, ch 35, agent on the part of the state, to receive a transfer of stock in the Bank of England belonging to the state, and he was allowed a commission of 4 per cent on the net sum to be by him received, in full satisfaction for his trouble. O H, having a claim against the state on account of land mortgaged to him by D D, which land was confiscated by the state, the agent was by the act of 1786, ch. 50, authorised to assign to O H a portion of the bank stock, not exceeding £11,000. By the act of 1801; ch. 103, the minister of the U S in London was vested with authority to receive a transfer of the stock and all dividends due, and to transfer to the agent 4 per cent in bank stock on the amount which might be transferred to him, and pay to the agent the like per centum on the dividends received. The minister received a' transfer of the stock, and transferred to O H to the amount due to him, and to the agent he transferred to the amount of 4 per cent commission on the entire capital of the bank stock. Held, that the agent was entitled to 4 per cent commission on the stock so transferred to the minister.

THE STATE VS. CHASE.

APPEAL from *Anne-Arundel* County Court. This was an action of *assumpsit*, brought against the state, for money had and received, and for sundry matters properly chargeable in account. The general issue was pleaded. At the trial it appeared in evidence, that under the act of April 1783, *ch.* 35, *Samuel Chase*, the plaintiff, (now appellee,) was appointed agent and trustee, on the part of the state, to execute several trusts, &c. relative to the capital stock in the Bank of *England* belonging to the state, and to receive a transfer thereof, and sell the same, &c. and for which he was allowed a commission of four *per cent.* on the net sum by him received, in full satisfaction for his trouble. By the act of 1801, *ch.* 103, the minister of the *United States* in *London* was vested with authority to receive, in his own name, in behalf of the state, a transfer of the stock, and all dividends due; and that he should transfer to the plaintiff four *per centum* in bank stock on the amount which might be transferred to him; and pay to the plaintiff the like *per centum* on the amount of any dividends due, which the minister might receive. *Osgood Hanbury* and Co. being creditors of *D. Dulany*, he executed to them a mortgage of his lands, which lands were confiscated by the state, and on application of *Hanbury* and Co. to the state for the payment of their debt, the act of 1786, *ch* 50, authorised the plaintiff to assign to them a portion of the bank stock, not exceeding £11,000 of the capital of the said stock. (*See Barclay vs. Russell*, 3 *Vesey*, 424). On the 1st of May 1803, the stock claimed by the state amounted to £187,567 12 0; but in the course of negotiations, on account of claims, &c. it was reduced; and on the 14th of August 1804, *William Pinkney*, esquire, the then minister of the *United States*, received a transfer for £100,940 0 1, entire capital bank stock, £6,976 1 8, navy 5 p. c. annuities, £8,314 16 1, 5 p. c. annuities of 1797, and cash paid him £5,865 7 5, and he transferred to *Hanbury's* executors £19,910 bank stock, £1531 navy 5 p. c. £1825, 5 p. c. of 1797, and paid them in cash £1237, in satisfaction of their claim of £11,000 bank stock, which was directed by the state to be assigned in payment of the debt of *Hanbury* and Co. The said minister caused to be transferred to the agent £4037 bank stock for his commission on the

*after deducting £10,000 for Mr. Hayford*

entire capital of bank stock, retaining the commissions on the annuities and cash, to answer the sum of money received by the agent's solicitors, by way of costs, and he caused to be transferred to the use of the state, £66,993 0 1 bank stock, £5445 1 8, navy 5 p. c. £6,489 16 1, 5 p. c. of 1797, and paid in cash £3,918 7 5. Part of the claim of the plaintiff in this action was for his commission of 4 p. c. on the annuities transferred and cash paid to *Hanbury's* executors; but it was resisted by the attorney general on the ground, that it was agreed by Mr. *Pinkney*, in order to obtain a transfer of the stock, that immediately on its being made to him, he would transfer the sum of £19,910 bank stock to *Hanbury's* executors; and on the stock being transferred, he did transfer that amount to *Hanbury's* executors; and the court were called on by by the attorney general to direct the jury, that the plaintiff was not entitled to a commission of 4 p. c. on the said stock so transferred to *Hanbury's* executors. But the court, [*Chase,* Ch. J. and *Harwood,* A. J.] were of opinion, that if the jury should find the above fact, and should also find from the evidence, that the said transfer was made to *Hanbury's* executors, to pay and satisfy a debt due from the state to *Hanbury,* by mortgage from *Dulany,* on land confiscated by the state, that in such case the state received the beneficial use of the stock so transferred, and the plaintiff was entitled, according to his contract with the state, and the several acts of the legislature confirmatory thereof, to 4 p. c. commission on the said stock thus transferred by Mr. *Pinkney.* The court were also of opinion, that the liability of the state to pay the said debt, did not depend on the bank stock, and if it had not been obtained by suit or negotiation, the obligation of the state to pay the said debt, would have remained, as it arose from the act of confiscation, and was secured by the treaty of peace. That the said claim of *Hanbury* had no connexion with the bank stock, nor was a lien on the same; that the only subject of negotiation was the right of the state to the bank stock, and the means used to obtain it could not be considered as a part of the subject of negotiation. The attorney general excepted on the part of the state; and the verdict and judgment being for the plaintiff, this appeal was prosecuted on the part of the state.

1810.

Legoux
vs
Wante

The cause was argued before BUCHANAN, GANTT, and EARLE, J. by

*Johnson*, (Attorney General,) for the State; and by *Martin*, for the Appellee, and by the Appellee in *propria persona*.

THE COURT agreed in opinion with the court below as expressed in the bill of exceptions.

GANTT, J. dissented.

JUDGMENT AFFIRMED.

DECEMBER.

To a bill in chancery for the sale of mortgaged premises; the defendant answered, that the mortgage was executed to secure the payment of money loaned at a usurious interest, and he exhibited certain interrogatories to be answered by the complainant. *Held*, that the principle of equity is, that no person is bound to answer so as to subject himself to punishment; but not so where the answering would create or occasion a forfeiture of his claim. The answer of the complainant admitting the usury, might subject him to a forfeiture or fine for the offence. Where the person who may have borrowed money on usurious interest, seeks relief in equity, he must do equity, and do what is right between the parties, which is the paying or tendering what is legally due.

## LEGOUX, *et al.* vs. WANTE.

APPEAL from the Court of Chancery. A bill was filed by *Wante* against the appellants, for the foreclosure of the equity of redemption in certain lands mortgaged by *Legoux* to *Wante*, by deed dated the 2d of November 1799, to secure the payment of $5900, on the 1st of October 1805, and for other relief, &c. The answer of *Legoux* stated, that the mortgage was executed to secure the payment of money loaned at a usurious interest, and he pleaded and relied on the act of assembly passed on that subject. He afterwards, by his petition, prayed that the complainant answer certain interrogatories to be propounded to him, and among others the following—"4th. Did not the complainant press for the payment of his debt, and did he not afterwards consent to give time to the defendant, *Legoux*, to pay the same; if so, what time, and what sum did the complainant, agree to give for the time? 5th. What rate of interest did the complainant demand for his money if he gave further time to pay the debt, and what rate of interest did the defendant finally agree to pay, &c. 6th. Did or did not *Legoux*, to secure the payment of the sum of money before mentioned as due from him on the 2d of October 1799, execute the deed of mortgage; was there any other consideration for that deed except the said debt, and what other consideration?" The complainant excepted to these interrogatories, and demurred generally to their being answered.

KILTY, Chancellor, (July 1808). The chancellor considers the principle of equity to be, that no person is bound to